887 F.2d 1081
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
John Ira TRUMAN, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent.
 No. 87-2678.
 United States Court of Appeals, Fourth Circuit.
 Submitted: March 2, 1989.
Decided: Oct. 4, 1989.
 
 S.F. Raymond Smith, United Mine Workers of America, on brief, for petitioner.
 George R. Salem, Solicitor of Labor, Donald S. Shire, Associate Solicitor, Sylvia T. Kaser, Counsel for Appellate Litigation, Paul L. Frieden, U.S. Department of Labor, on brief, for respondent.
 Before ERVIN, Chief Judge, CHAPMAN, Circuit Judge, and ROBERT G. DOUMAR, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 John Ira Truman petitions for review of the decision and order of the Benefits Review Board (BRB) affirming an administrative law judge's (ALJ) denial of his application for benefits under the Black Lung Benefits Act, 30 U.S.C. Secs. 901 et seq. The ALJ first found that Truman established at most only 7- 1/2 years of coal mine employment, an insufficient length of time to invoke the interim presumption of total disability from pneumoconiosis arising out of coal mine employment, 20 C.F.R. Sec. 727.203(a) (1988). The ALJ also found that Truman had failed to establish that his pneumoconiosis arose out of his coal employment or that he was totally disabled. We affirm.
 
 
 2
 * John Truman is 64 years old and has one dependent, his wife, Elva Truman. Truman was periodically employed as an underground coal miner between 1943 and 1967. Truman's last employment was as a temporary miner's helper. Previously, Truman performed a variety of mine jobs, such as setting mining machine jacks and timbers, and shoveling coal and rock dust. Truman also ran mining machines and cleaned them. In the late 1940's and early 50's, Truman worked some 5- 1/2 years in a smelting plant that produced metal alloys. In the course of this non-coal mine employment, Truman was also exposed to coal dust. Truman has smoked for thirty years. In June 1971 Truman's right leg was amputated below the knee because of gangrene resulting from arteriosclerosis.
 
 
 3
 On March 12, 1973, Truman filed a claim for black lung benefits with the Social Security Administration under Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended. The Social Security Administration initially denied benefits on December 24, 1975, and after review pursuant to the Black Lung Benefits Reform Act of 1977 (Benefits Reform Act), 30 U.S.C. Sec. 945, finally denied benefits on July 10, 1979.
 
 
 4
 Pursuant to the Benefits Reform Act, Truman's denied claim was referred to the Department of Labor by the Social Security Administration. See 30 U.S.C. Sec. 945(a)(2)(B) (1982). Truman's claim was denied by the Office of Workers' Compensation Programs (OWCP) on September 3, 1980. A request for reconsideration was also denied.
 
 
 5
 At an informal conference in February 1982, the Director of the OWCP (the Director) agreed that Truman had pneumoconiosis. Benefits were again denied, however, on the ground that Truman failed to establish that his pneumoconiosis, and any resulting disability, were causally related to his coal mine employment. Truman requested a formal hearing and his claim was referred to the Department of Labor's Office of Administrative Law Judges in December 1982.
 
 
 6
 Truman claimed that his coal mine employment had exceeded 10 years, seeking to invoke the interim presumption of 20 C.F.R. Sec. 727.203(a). The ALJ reviewed the employers that Truman had listed on his application for benefits, Truman's testimony at the hearing, affidavits submitted by co-workers and his social security payments records. Upon reviewing this evidence, the ALJ concluded that Truman had established at most only 7- 1/2 years of coal mine employment. Finding the interim presumption of 20 C.F.R. Sec. 727.203(a) unavailable to Truman, the ALJ assessed his claim under the permanent benefits criteria of 20 C.F.R. Part 410.
 
 
 7
 Applying these regulations, the ALJ found that Truman failed to establish that his pneumoconiosis arose out of his 7- 1/2 years of coal mine employment. The ALJ discredited the opinions of the physicians who had examined Truman and who opined that his pneumoconiosis was a result of his coal mine employment. The ALJ found that those opinions were based on a reported patient history of 18-20 years of coal mine employment with no mention of Truman's substantial non-coal mine related dust exposure. Based upon the opinions and findings of two physicians that performed ventilatory and arterial blood gas studies, the ALJ also found that Truman's pneumoconiosis would not prevent him from resuming his last usual coal mine employment and that he was not totally disabled within the meaning of the Black Lung Benefits Act. Accordingly, the ALJ denied benefits.
 
 
 8
 On appeal to the BRB, Truman argued that the ALJ's computation of the length of his coal mine employment was improper. The BRB rejected Truman's argument and affirmed the ALJ's finding of less than 10 years of coal mine employment. The BRB then affirmed the ALJ's finding that Truman had failed to establish that his pneumoconiosis arose out of his coal mine employment on the ground that Truman had not raised any specific allegations of legal or factual error regarding that finding. Concluding that affirmance of the lack of causation finding precluded entitlement to benefits under either the permanent criteria of 20 C.F.R. Part 410 or the interim criteria of 20 C.F.R. Sec. 410.490, the BRB found it unnecessary to reach Truman's arguments concerning total disability and the alleged impropriety of the Director requiring Truman to be examined by another physician just prior to the hearing before the ALJ. The BRB affirmed the ALJ's denial of benefits and this appeal followed.
 
 II
 
 9
 Truman argues in this appeal that the ALJ's month by month breakdown of his social security earnings record was not in keeping with the liberal policy of the Black Lung Benefits Act and that the ALJ improperly discounted his testimony and the affidavits of co-workers attesting that Truman was employed in the mines prior to 1940. We disagree.
 
 
 10
 An ALJ's finding regarding length of coal mine employment must be affirmed if it is based on a reasonable method of computation and is supported by substantial evidence. We find that the ALJ's reliance on social security earnings records was a reasonable method for calculating the length of Truman's coal mine employment.
 
 
 11
 Although Truman's recollection of his coal mine employers was consistent with his social security earnings records, his recollection of periods of time in coal mine employment not only differed substantially from his earnings records, but was also inconsistent. On his initial application for benefits, Truman listed some sixteen years of coal mine employment. On a later form, the dates set forth by Truman add up to less than 10 years. At the hearing, Truman recalled from 18 to 25 years of coal mine employment. In these circumstances, the ALJ properly relied on Truman's social security earnings records.
 
 
 12
 The ALJ fully considered the co-workers' affidavits and rationally found that they were not probative of any additional periods of coal mine employment. The ALJ is in a better position than are we to assess the weight and sufficiency of the evidence. Zbosnik v. Badger Coal Co., 759 F.2d 1187, 1190 (4th Cir.1985). The ALJ's finding of less than 10 years of coal mine employment must be sustained.
 
 
 13
 The Director concedes that after finding less than 10 years of coal mine employment, the ALJ erred in applying the permanent criteria contained in 20 C.F.R. Part 410 rather than the interim presumption of 20 C.F.R. Sec. 410.490, see Pittston Coal Group v. Sebben, --- U.S. ----, 109 S.Ct. 414 (1988), and the Department of Labor permanent criteria contained in 20 C.F.R. Part 718. The Director argues, however, that because both Sec. 410.490 and Part 718 require a claimant to show that his pneumoconiosis arose out of coal mine employment, see 20 C.F.R. Secs. 410.490(b)(2); 718.203(c) (1988), the unchallenged finding by the ALJ that Truman failed to establish this requisite causal connection precludes Truman's claim. We agree.
 
 
 14
 To receive black lung disability benefits, a miner must prove that he has pneumoconiosis, that he contracted it through his coal mine employment, and that he is totally disabled due to the disease. See 20 C.F.R. Secs. 410.410(b); 718.201-718.204 (1988). Various presumptions may be available to assist a miner in proving these elements. Because Truman originally filed his claim for benefits prior to July 1, 1973, the presumptions contained in both 20 C.F.R. Sec. 727.203 and Sec. 410.490 are applicable to his claim.
 
 
 15
 With less than 10 years of coal mine employment, Sec. 410.490(b) is the most advantageous to Truman. Under this subsection, Truman would be presumed totally disabled due to his pneumoconiosis if he established that the disease arose out of his coal mine employment. See 20 C.F.R. Sec. 410.490(b)(2) (1988). The ALJ found that Truman failed to establish this required causal connection. Truman did not challenge the ALJ's causation finding either before the BRB or in this Court. That finding is supported by substantial evidence and must stand. Because this finding precludes Truman's claim,[1] the administrative denial of benefits must be affirmed.
 
 
 16
 We dispense with oral argument because the facts and legal arguments are adequately presented in the materials before the Court and oral argument would not significantly aid the decisional process.
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 We need not address the issue of total disability or of the propriety of requiring Truman to be examined by Dr. Daniel just prior to the hearing before the ALJ. We do note, however, almost 5 years had elapsed since Truman's last medical examination for purposes of his claim. Given that a claimant's medical condition at the time of the hearing is the necessary medical inquiry, it is hard to accept Truman's contentions that the examination by Dr. Daniel was required for the purpose of finding grounds to deny Truman's claim